UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUST PLAY, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>BOREI TOYS, BOTOU YONGCHUANG SPRING MANUFACTURING CO., LTD., CHAOSHANLIANGZAI, CHOICE VIP STORE, DONGGUAN JIULE BUSSINESS LIMITED COMPANY, EIDOMAC CAR, FINEWE INDUSTRY CO., LTD. STORE, FOSHAN NANHAI QILI HARDWARE AND SPRING PRODUCTS FACTORY, HAPPY BEAUTY BEAUTY, HUNAN RACO ENTERPRISES CO., LTD., JIANGMEN HENGXIN PRECISION PARTS CO., LTD., MAI MAI STORE, NINGBO JIANGBEI LISHENG SPRING CO., LTD., NINGBO KELSUN INT'L TRADE CO., LTD, NOAS, NOVEL DESIGN, RAYCHOI, SHANGHAI LONG NICE INTERNATIONAL TRADING CO., LTD., SHANTOU LONGHU LONGHENG TOYS FACTORY, SHANTOU MARKET UNION CO., LTD., SHENZHEN DAKUNLUN HARDWARE & PLASTIC PRODUCTS CO.,LTD., SHENZHEN HONGYAN E- COMMERCE CO., LTD., SHENZHEN SONGKANG TECHNOLOGY CO., LTD., SHENZHEN YUXIANG TECHNOLOGY CO., LTD., SHOP1102400224 STORE, SHOP1102844309 STORE, SHOP1103202353 STORE, SHOP1103277074 STORE, SHOP1103602395 STORE, SHOP1104162738 STORE, SUZHOU BEST CRAFTS CO., LTD., XIAMEN FINEWE INDUSTRY CO., LTD., XIAMEN HONGSHENG HARDWARE - SPRING CO., LTD., YIWU BOBO TOYS CO., LTD., YIWU GUANGMAO E-COMMERCE CO., LTD., YIWU PIANPIAN TRADING CO., LTD., YIWU YOU CAN IMP & EXP CO., LTD., YUE WEN XIU, ZHANG XIAO DIAN, ZHEJIANG ZHENGNA TECHNOLOGY CO., LTD. and ZONGHE STORE,<br><br>*Defendants* | Civil Case No. 25-cv-5841 (LAK)<br><br>1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANTS' MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 4) ORDER AUTHORIZING EXPEDITED DISCOVERY<br><br>**FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Just Play** | Just Play, LLC |
| **Defendants** | Borei Toys, Botou Yongchuang Spring Manufacturing Co., Ltd., Chaoshanliangzai, Choice VIP Store, Dongguan Jiule Bussiness Limited Company, EIDOMAC CAR, FINEWE INDUSTRY CO., LTD. Store, Foshan Nanhai Qili Hardware And Spring Products Factory, Happy beauty beauty, Hunan Raco Enterprises Co., Ltd., Jiangmen Hengxin Precision Parts Co., Ltd., Mai Mai Store, Ningbo Jiangbei Lisheng Spring Co., Ltd., Ningbo Kelsun Int'l Trade Co., Ltd, NOAS, Novel design, raychoi, Shanghai Long Nice International Trading Co., Ltd., Shantou Longhu Longheng Toys Factory, Shantou Market Union Co., Ltd., Shenzhen Dakunlun Hardware & Plastic Products Co.,Ltd., Shenzhen Hongyan E- Commerce Co., Ltd., Shenzhen Songkang Technology Co., Ltd., Shenzhen Yuxiang Technology Co., Ltd., Shop1102400224 Store, Shop1102844309 Store, Shop1103202353 Store, Shop1103277074 Store, Shop1103602395 Store, Shop1104162738 Store, Suzhou Best Crafts Co., Ltd., Xiamen Finewe Industry Co., Ltd., Xiamen Hongsheng Hardware - Spring Co., Ltd., Yiwu Bobo Toys Co., Ltd., Yiwu Guangmao E-Commerce Co., Ltd., Yiwu Pianpian Trading Co., Ltd., Yiwu You Can Imp & Exp Co., Ltd., Yue wen xiu, Zhang Xiao dian, Zhejiang Zhengna Technology Co., Ltd. and ZONGHE Store |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Temu** | Temu.com, an online marketplace and e-commerce platform operated by the Chinese e-commerce company PPD Holdings, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship |

i

| | |
|---|---|
| | their products, primarily including heavily discounted consumer goods, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **North Dec.** | Declaration of Stephanie North in Support of Plaintiff's Application |
| **Levine Dec.** | Declaration of Melissa J. Levine in Support of Plaintiff's Application |
| **Slinky Mark** | U.S. Trademark Registration No. 1,455,493 for "SLINKY" for a variety of goods in Class 28 |
| **Slinky Product** | A precompressed helical spring toy that can perform a number of tricks, which comes in a variety of sizes colors and materials that can light up and make noise |
| **Counterfeit Products** | Products bearing or used in connection with the Slinky Mark, and/or products in packaging and/or containing labels and/or hang tags bearing the Slinky Mark, and/or bearing or used in connection with marks that are confusingly similar to the Slinky Mark and/or products that are identical or confusingly similar to the Slinky Product |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba, AliExpress and/or Temu, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert |

|  | or participation with any of them |
|---|---|
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), and PPD Holdings d/b/a Temu, Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba, AliExpress and/or Temu as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

On this day, the Court considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products.[1] A complete list of Defendants is attached hereto as **Schedule A**, which also includes links to Defendants' Merchant Storefronts and Infringing Listings. Having reviewed the Application, Declarations of Stephanie North and Melissa J. Levine, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW

1. Slinky is a precompressed helical spring toy that can perform a number of tricks. Slinky originated in the 1940's when the inventor watched a spring fall off a desk. It's a quintessential childhood toy and an icon of classic fun.

2. With a catchy theme song, Slinky has captivated kids with its ability to walk down stairs (alone or in pairs), making that classic slinkity sound.

3. All these decades later, Slinky's popularity has persisted, resulting in sales of more than 300 million products. The popular Slinky Dog character has starred in all four Toy Story movies. Slinky was also named to TIME's list of the ALL-TIME 100 Greatest Toys: it has been inducted into the National Toy Hall of Fame; and it is part of the MoMA's architecture and Design collection.

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

4. Just Play sells its Slinky Product through major retailers and online marketplaces, including, but not limited to Amazon.

5. The Slinky Product is marketed under the Slinky Mark.

6. The Slinky Product retails from $2.99 (single pack) to $14.99 (3 pack).

7. While Just Play has gained significant common law trademark and other rights in its Slinky Product through its extensive use, advertising and promotion, Just Play has also protected its valuable rights by filing for and obtaining federal trademark registrations.

8. For example, Just Play is the owner of the following U.S. Trademark Registration No.: 1,455,493 for "SLINKY" for a variety of goods in Class 28.

9. The success of the Slinky Product is due in part to Just Play's marketing and promotional efforts. These efforts include advertising and promotion through social media, print and internet-based advertising and publicity for the Slinky Product, and placement of the Slinky Product at authorized major retail outlets.

10. Just Play's success is also due to its use of the highest quality materials and processes in making the Slinky Product.

11. Additionally, Just Play owes a substantial amount of the success of the Slinky Product to its consumers and word-of-mouth buzz that its consumers have generated.

12. Just Play's efforts, the quality of its Slinky Product and the word-of-mouth buzz generated by its consumers have made the Slinky Mark and Slinky Product prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Slinky Mark and Slinky Product and have come to associate them exclusively with Just Play. Just Play has acquired a valuable reputation and goodwill among the public as a result of such associations.

13. Just Play has gone to great lengths to protect its interests in the Slinky Product and

Slinky Mark. No one other than Just Play and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale, sell and/or import into the United States for subsequent use any goods utilizing the Slinky Mark or use the Slinky Mark in connection with goods or services or otherwise, without the express permission of Plaintiff.

14. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying and/or offering for sale Counterfeit Products through Defendants' User Accounts and Merchant Storefronts with Alibaba, AliExpress and/or Temu (see **Schedule A** for links to Defendants' Merchant Storefronts and Infringing Listings).

15. Defendants are not, nor have they ever been, authorized distributors or licensees of the Slinky Product. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Slinky Mark, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Slinky Mark.

16. Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

17. As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

   a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Slinky Mark;

   b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality

of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Slinky Product; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Slinky Mark, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Slinky Mark, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Slinky Mark and records relating thereto that are in their possession or under their control and/or (iv) open new User Accounts and Merchant Storefront under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence.

18. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Slinky Mark and to its reputation if a temporary restraining order is not issued.

19. Public interest favors issuance of the temporary restraining order in order to protect

Plaintiff's interests in and to its Slinky Mark, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as a Slinky Product.

20. Plaintiff has not publicized its request for a temporary restraining order in any way.

21. Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants.

22. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Slinky Mark. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants' Merchant Storefronts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) and I(C)(1) of this Order, respectively, before requiring service on Defendants.

23. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

# ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

## I.   Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for twenty eight (28) days from the date of this order,[2] and for such further period as may be provided by order of the Court:

1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Slinky Mark and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Slinky Mark;

2) directly or indirectly infringing in any manner Plaintiff's Slinky Mark;

3) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Slinky Mark to identify any goods or service not authorized by Plaintiff;

4) using Plaintiff's Slinky Mark and/or any other marks that are confusingly similar to the Slinky Mark on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

5) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product

---

[2] The Court finds, pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, that good cause exists to extend this *ex parte* temporary restraining order because, in the Court's experience, service in this type of case is complex and unlikely to be effectuated within fourteen days.

6

    manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

6) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

7) effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

8) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(7) above and I(B)(1) and I(C)(1) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging

7

in any of the following acts or omissions for twenty-eight (28) days from the date of this order, and for such further period as may be provided by order of this Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

C. IT IS HEREBY ORDERED, as sufficient cause has been shown, that immediately upon receipt of service of this Order, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions for twenty-eight (28) days from the date of this order, and for such further period as may be provided by order of this Court:

1) instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(7) and I(B)(1) above.

## II.     Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and Defendants' Assets and shall provide written confirmation of such attachment to Plaintiff's counsel.

### III. Order Authorizing Bifurcated and Alternative Service by Electronic Means

A. IT IS FURTHER ORDERED pursuant to Rule 4(f) of the Federal Rules of Civil Procedure, and Articles 1 and 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), as sufficient cause has been shown, that service may be made on, and shall be deemed effective if it is completed by the following means:

   1) delivery of: (i) PDF copies of this Order together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses to be determined after having been identified by Alibaba, AliExpress and/or Temu pursuant to **Paragraph IV(C)**.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs II(A)** and **IV(C)** of this Order.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that the Clerk of the Court shall issue a single original summons directed to all Defendants as listed in an attachment to the summons that will apply to all Defendants.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

1) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

2) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Alipay will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com;

3) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba and AliExpress will be able to download a PDF copy of this Order via electronic mail to IPR_USTRO@service.alibaba.com and IPR-USTRO@aliexpress.com;

4) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Temu will be able to download a PDF copy of this Order via electronic mail to christine.casaceli@temu.com and lesgal@temu.com;

5) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at Third Party Requests at thirdpartyrequests@payoneer.com; and

6) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to trorequest@pingpongx.com.

### IV. Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a. their true name and physical address;

      b. the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own and/or operate;

      c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

      d. the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

      e. the steps taken by each Defendant, or other person served to comply with **Section I**, above.

2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary

11

report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall identify any and all of Defendants' User Accounts and Merchant Storefronts, and provide Plaintiff's counsel with a summary report containing account details for any and all User Accounts and Merchant Storefronts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   a. account numbers;

   b. current account balances;

c. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

d. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

e. any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

f. any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

a. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers

13

      for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph IV(C);

b. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph IV(C);

c. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

d. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Slinky Mark and/or marks that are confusingly similar to, identical to and constitute an infringement of the Slinky Mark.

## V.     Security Bond

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of twenty-five thousand Dollars ($25,000) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VI.  Sealing Order

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Stephanie North and Melissa J. Levine in support thereof and exhibits attached thereto, and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), II(A) and IV(C)** of this Order.

B. IT IS FURTHER ORDERED that Plaintiff shall file a letter regarding the continuing need for sealing when (1) there is no longer a need to keep the matter under seal or (2) within fourteen days, whichever is earlier.

## VII.  Preliminary Injunction Hearing

Plaintiff shall promptly submit to Judge Kaplan, the presiding district court judge in this matter, a proposed order to show cause with respect to Plaintiff's motion for a preliminary injunction.

**SO ORDERED.**

SIGNED this 17th day of July, 2025, at 2:15 p.m.

                                      HON. JEANNETTE A. VARGAS
                                      UNITED STATES DISTRICT JUDGE
                                            SITTING IN PART I